# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| COLANTHEUS BENTON | CIVIL ACTION |
|---|---|
| VERSUS | NO: 11-0799 |
| WAL-MART STORES, INC., ET AL. | UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY |

## ORDER

Before the Court is Defendant, Wal-Mart Stores, Inc.'s, **Motion for Summary Judgment (R. Doc. 17)**, seeking dismissal of all of Plaintiff, Colantheus Benton's ("Benton"), claims against it as a matter of law. The motion is unopposed.[1] The motion was noticed for submission on August 8, 2012, and was set for hearing on the briefs.

## I.   Background

Benton brought this negligence and strict liability suit against Wal-Mart on November 23, 2011.[2] In her petition, she alleges that while a customer in a Wal-Mart store, she obtained a blood pressure check from a blood pressure machine operated and under the control of Wal-Mart. (R. Doc. 1-1, pp. 1-2). She further alleges that once tethered to the blood pressure machine, she was stung by several bees. *Id.* at 1. As a result, she was unable to wear a bra for several weeks due to soreness and "bee infection," and required surgery. *Id.* According to Benton this was not the first time in which

---

[1]Benton filed an opposition on August 13, 2012, although because the motion was noticed for submission on August 8, 2012, his response was due no later than August 1, 2012. Therefore, it was untimely. .

[2]Benton first filed this petition on November 10, 2011, in the 19th Judicial District of the Parish of East Baton Rouge, State of Louisiana. (R. Doc. 1-2, p. 1). It was duly removed by Wal-Mart to the U.S. District Court for the Middle District of Louisiana on November 23, 2011. (R. Doc. 1-1).

bees had been found "existing in" Wal-Mart's blood pressure machine, and that employees of Wal-Mart knew of the presence of bees. *Id.* at 2.

Benton brought negligence claims for (1) emotional depression and anxiety, past and future; (2) physical pain and sufferings, past and future; (3) surgery to cure infections to her body; (4) medical bills, past and future; (5) humiliation and embarrassment, past and future; (6) loss of enjoyment of life, past and future; and (7) loss [sic] wages, past and future. *Id.* Wal-Mart's Answer denied all of Plaintiff's allegations and raised affirmative defenses. (R. Doc. 3, pp. 1-4).

On March 30, 3012, Benton's deposition was taken. Benton testified to the following regarding the incident:

> Q. Do you have any idea how that bee or bees came to be there in the first place?
> A. No, I don't.
> Q. When you had shopped there before, had you ever noticed bees in the store?
> A. No. I - I - I - when I shopped there before, I - I've never seen no bees in the store. Because really and truly, I wasn't looking for none in there.
> . . . .
> Q. [D]o you know where the bee or bees came from? Was it from the sleeve that you put your arm in, or do you know?
> A. No, I don't know exactly where they came from. I know they - they - they - they - they got there - they got me, though.
> Q. I understand. Do you have any idea how long those bees may've been there?
> A. No, I don't.
> Q. Do you have any information to suggest that a Wal-Mart employee was aware of the fact that they had bees there?
> A. Yes. I - I - yes.
> Q. What information do you have that would suggest that they knew that they were there?
> A. Because the guy told me that they had taken care of the problem.
> . . . .
> Q. That was after the incident?
> A. Yes.
> Q. Do you have any information to suggest that they [Wal-Mart] were aware of the fact that they had bees there before the incident, before they stung you?
> A. No.
> Q. So what [the manager] told you later was after you reported that they had bees, they got the exterminator out there to take care of it?
> A. That's right.

(R. Doc. 17-3, pp. 5-6). Benton also indicated that she had no knowledge on how long the bees had been present in the blood pressure machine, or whether Wal-Mart employees knew or had reason to know of the presence of the bees. *Id.* at pp. 5-6.

On July 20, 2012, Wal-Mart moved for summary judgment, attaching excerpts from Benton's deposition. The undisputed facts are, *inter alia*, as follows. Benton was a customer in Wal-Mart's store, and was stung by a bee while using Wal-Mart's blood pressure machine. (R. Doc. 17-2, p. 1; R. Doc. 17-3, p. 2). Benton has no information about the source of the bees, no information about whether any Wal-Mart employees knew the bees were present prior to the use of the machine, and no evidence to suggest how long the bees might have been present in or around the machine. (R. Doc. 17-2, p. 1; R. Doc. 17-3, pp. 4-6).

Based on these facts, Wal-Mart argues that Benton's claims must fail because under Louisiana law, because Benton's allegation that bees were "existing in" the blood pressure machine when she sat down to use it is insufficient to establish Wal-Mart's negligence. (R. Doc. 17-1, pp. 3-4). Indeed, all Benton's testimony shows is that she was stung by a bee shortly after sitting down at the machine. *Id.* By extension, Wal-Mart argues that Benton cannot prove that Wal-Mart knew about the presence of bees in or near the blood pressure machine at the time Benton used it, and therefore has failed to establish a *prima facie* case of negligence. *Id.* at 4.

## II. **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 56(a) states that a court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, --- F.3d ----, 2012 WL 3517357, at *3 (5th Cir. Aug. 16, 2012). There is

"no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponents claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The *Celotex* standard . . . is appropriate only where . . . the non-moving party bears the burden of proof on an issue that the moving party seeks to have determined through summary judgment." *Mudrick v. Cross Services, Inc.*, 200 Fed. App'x 338, 340 (5th Cir. 2006).

"After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted). Here, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). Although "[t]he court must resolve factual controversies in favor of the nonmoving party, . . . the nonmoving party cannot satisfy its burden merely by establishing some metaphysical doubt as to the material facts, by conclusional allegations in the affidavits, or by only a scintilla of evidence." *Armstrong v. K & B Louisiana Corp.*, 2012 WL 3834068, at *2 (5th Cir. Sept. 5, 2012) (citations and internal quotation marks omitted); *see Little*, 37 F.3d at 1075 (same). In considering a summary judgment motion, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Rule 56(c); *see Celotex*, 477 U.S. at 322-23.

**III.   Analysis**

    **A.   Whether Wal-Mart's Motion is Opposed on Unopposed**

Wal-Mart's motion is unopposed because Benton attempted to file an opposition on August 13, 2012, which was untimely. (R. Doc. 25). Under Eastern District Local Rule 7.4, all motions must

be filed at least 8 days prior to the submission date.[3] Here, Wal-Mart's Motion for Summary Judgment was noticed for submission on August 8, 2012, which required Benton to file her opposition, if any, no later than August 1, 2012. However, Benton's Opposition was filed on August 13, 2012. Therefore, Benton's Opposition was untimely.

The issue is then whether the Court should consider Benton's opposition notwithstanding the fact that it was untimely. Benton has attempted unsuccessfully to extend the summary judgment deadline. On August 13, 2012, Benton properly filed an exparte Motion to Continue Motion for Summary Judgment (R. Doc. 24). On August 15, 2012, Wal-Mart properly filed a Memorandum in Support of Motion for Summary Judgment (R. Doc. 34). Therein, Wal-Mart argued that (1) Benton's Opposition was untimely, (2) in the event the Court considered Benton's Opposition, the Court should strike the Affidavit of Colantheus Benton attached thereto (R. Doc. 25-4), and (3) Benton's request for a continuance should be denied. *Id.* at 1. Later that day, the Court granted leave for Wal-Mart to file its Memorandum in Support (R. Doc. 33), and denied Benton's request for a continuance (R. Doc. 32).[4] To date, Benton has not moved for leave to file an untimely opposition.

Similar to all filing deadlines, trial courts have broad discretion to consider whether a motion

---

[3]Although this case originated in the Middle District of Louisiana, it was subsequently referred to the Undersigned Magistrate Judge in the Eastern District of Louisiana, therefore Eastern District Local Rules should control. However, the choice of local rules is irrelevant here because even under Middle District local rules, the opposition would be untimely. Therein, "[e]ach respondent opposing a motion shall file a response . . . within 21 days after service of the motion." MDLA L.R. 7.4. Here, the instant motion was filed on July 20, 2012. Between that date and August 13, 2012, 24 days passed.

[4]Thereafter, on August 23, 2012, Benton filed an exparte motion to respond to Defendant's Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (R. Doc. 41). Therein, Benton argued that the Wal-Mart introduced new evidence in its Memorandum in Support, and argued that Wal-Mart's request to strike the Affidavit of Colantheus Benton attached to Benton's Opposition to Wal-Mart's Motion for Summary Judgment should be denied. The Court has declined to act upon R. Doc. 41 until now because it finds that Benton's untimely opposition to Wal-Mart's Motion for Summary Judgment is untimely and should not be considered, and therefore the issue of whether to strike the Affidavit of Colantheus Benton is irrelevant. By extension, Benton's Motion to Respond to Defendant's Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment can be denied as moot.

is timely or untimely for purposes of summary judgment. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995). Courts in the Eastern District of Louisiana remain able to exercise this broad discretion. *See Rixner v. Laravia*, No. 11-2090, 2012 WL 1836256, at *1-*3 (E.D. La. May 21, 2012) (considering, without stated explanation, merits of untimely motion in opposition filed by *pro se* defendant); *Rubins v. Department of Agriculture*, No. 98-3525, 1999 WL 1276831, at *1 (E.D. La. 1999) (Roby, M.J.) (considering untimely opposition to motion for summary judgment on reconsideration).

Here, the circumstances of this case indicate that the Court should consider Wal-Mart's Motion as unopposed. As noted above, although more than a month has passed since Benton filed her untimely opposition, she has made no attempt to move for leave of the Court to file a timely opposition disputing any facts. Instead, Benton first moved to continue summary judgment, which was denied. Benton's document reflects a misunderstanding of the *submission* date with the deadline for filing oppositions, as she states that "[t]he last day for plaintiff to respond to the defendant's motion for summary judgment is August 8, 2012." (R. Doc. 24, p. 1). Benton argued in support of the motion for a continuance that "Plaintiff has been pursuing a witness who promised to come forward and sign an affidavit," but "the potential witness has not come forward. Thus, additional time is needed." *Id.* In its Order denying Benton's Motion to Continue, the Court found Benton's purported explanation regarding the "witness" to be insufficient. (R. Doc. 32, pp. 1-2). Further, the Court noted that Benton's purported misunderstanding regarding the deadline for filing his opposition - August 8 - was questionable because Benton's motion in opposition was filed on August 13 - and thus would be untimely under any circumstances. *Id.* at 2.

Instead of filing a motion for leave to file an opposition, Benton, who is represented by counsel, then chose to submit a response to the plaintiff's opposition, which merely responded to

6

argument (2) in Wal-Mart's memorandum in support.⁵ In these circumstances, Wal-Mart's Motion for Summary Judgment should be considered unopposed.

**B.      Whether the Motion Can Be Granted as Unopposed**

The next issue is whether the fact that there is no opposition permits the Court to simply *grant* the motion as unopposed. 2010 amendments to Fed. R. Civ. Proc. 56(e) states that the court may "grant summary judgment if the motion and supporting materials- including the facts considered undisputed - show that the movant is entitled to it," or "issue any other appropriate order." *Id.* at (e)(3)-(4). Therefore, it is unclear whether the plain language of the 2010 amendments explicitly *requires* the Court to consider the supporting materials if confronted with an undisputed motion for summary judgment. Moreover, L.R. 56.2 does not require consideration of the merits of unopposed summary judgment motions, and states that "[a]ll material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement." L.R. 56.2.⁶

However, the answer is that notwithstanding L.R. 56.2, the Court may not take this step, because "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," i.e., proving that there is no genuine dispute as to any material fact in this case. *See Celotex*, 477 U.S. at 323. Further, the Fifth Circuit has found that where non-

---

⁵Benton has attempted to file Memorandums in Opposition on August 9, 2012, August 13, 2012, but these were returned as deficient. (R .Docs. 21, 23).

⁶L.R. 56.2 of the Middle District of Louisiana, while containing slightly different language, also states that on summary judgment facts will be deemed admitted if not opposed. Notably, other district courts in the Fifth Circuit impose strict limitations on a court's discretion. *See Barr v. Koch Industries, Inc.*, 2006 WL 1738396, at *1 n.1 (noting that in the Northern and Southern Districts of Mississippi, Rule 7.2(C)(2) of the Uniform Local Rules requires consideration on the merits). *Cf. Torres v. County of Webb*, 150 Fed. App'x 286, 290 (5th Cir. 2005) (finding that claim was properly dismissed on summary judgment where not only was the opposition not timely filed, but the non-moving party had disregarded a direct court order warning that if non-movant failed to respond within the time mandated by the local rules, the motion would be granted as unopposed).

compliance with a local rule filing deadline would lead to disposition of the matter with prejudice, the local rule should be disregarded. *Ramsey v. Signal Delivery Service, Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980) (finding that granting 12(b)(6) motion due to untimeliness of response pursuant to local rule was improper); *John v. State of Louisiana (Board of Trustees for State Colleges and Universities*, 757 F.2d 698, 709 (5th Cir. 1985) (extending *Ramsey* to summary judgment context). Therefore, the Court many not simply grant Wal-Mart's motion as unopposed, but must consider whether, based on its merits, there remain no genuinely disputed issues of material fact.

C.      **Whether Wal-Mart's Motion Is Properly Presented in the Absence of Affidavits**

In support of its Motion, Wal-Mart did not attach any affidavits from store employees or other competent witnesses affirmatively refuting any of the elements of Benton's negligence or strict liability allegations. Instead, Wal-Mart attached (1) excerpts of Benton's deposition testimony, and (2) a statement of undisputed facts based upon that testimony.

As mentioned above, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponents claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A Fifth Circuit court interpreting *Celotex* found that a summary judgment motion did not need to be supported by affidavits in order to be properly presented. *See, e.g.*, *Medlin v. Palmer*, 874 F.2d 1085, 1088-89 (5th Cir. 1989) (affirming trial court's grant of summary judgment for city in municipal ordinance violation case, where city's motion for summary judgment as to the constitutionality of a statute did not contain an affidavit, but only a copy of the pertinent ordinance).

Wal-Mart has included deposition testimony in support of its motion, which "properly

supports" its motion under the Rule.[7]

### D. **Merits of Wal-Mart's Motion**

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 317 U.S. at 323. Therefore, the last issue is whether the merits of Wal-Mart's submission sufficiently establishes its entitlement to summary judgment in connection with one of the essential elements of Benton's claims for defective equipment or general negligence.

Wal-Mart admits two material facts: (1) that Benton was a customer in Wal-Mart's store, and (2) that she was stung while operating a machine owned by Wal-Mart. (R. Doc. 17-2, p. 1). Wal-Mart also establishes that Benton possesses no information to suggest that a Wal-Mart employee knew the bees were present in the machine prior to Benton's use of the machine, and Benton produces no

---

[7]A related issue is whether the fact that Benton's claims lie in negligence and strict liability somehow confound the operation of the normal summary judgment rules in cases where no affidavits have been submitted.

Once a properly presented summary judgment motion has been presented, the nonmoving party may not rest on conclusory allegations in the pleadings. *Little Liquid*, 37 F.3d at 1075. Instead, after a properly supported summary judgment motion has been filed, the nonmovant must go *beyond the pleadings* and to prove, either by affidavits, *or by the depositions, answers to interrogatories, and admissions on file*, that there is no genuine issue for trial. *Celotex*, 477 U.S. at 322-23. Admittedly, courts in the Eastern District of Louisiana have found that where a summary judgment motion filed in connection with a negligence act is actually opposed, courts have failed to grant these motions due to the fact that negligence is a jury question. *See, e.g., Greer on Behalf of Greer v. Wal-Mart Stores, Inc.*, 1994 WL 148804, at *2 (E.D. La. 1994) (finding summary judgment inappropriate because a question of fact remained regarding whether Wal-Mart had been reasonable in failing to attach child seats to its shopping carts).

However, the fact that negligence is a jury question is irrelevant in the instant case, because Benton has not actually opposed Wal-Mart's motion. *See Bedingfield ex rel. Bedingield v. Deen*, 2012 WL 3868959, at *10 (5th Cir. Sept. 6, 2012) (finding negligence claims properly dismissed where plaintiffs had failed to present any evidence, beyond the pleadings, sufficient to create a genuine issue of material fact as to causation, an essential element of their claim); A party who rests on the pleadings fails to provide sufficient evidence in negligence actions. *Phillips v. Digicon Geophysical Corp.*, 1996 WL 497187, at *1 (E.D. La. Aug. 30, 1996) (dismissing action brought for, *inter alia*, negligence, when a summary judgment motion was brought and the plaintiff rested on mere allegations).

evidence to suggest how long the bees may have been present in the machine. *Id.*

Wal-Mart removed this case from state court on the basis of federal diversity jurisdiction, 28 U.S.C. § 1332. (R. Doc. 1, p. 1). As such, Louisiana state law controls. *See Eerie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### 1. Defective Equipment

The Louisiana Civil Code states that an owner or custodian is only liable to a licensee for damages when "he knew, or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." LA. CIV. CODE. ANN. art. 2317.1. "The addition of knowledge as an element has effectively eliminated strict liability in most circumstances." *Dufrene v. Gautreau Family, LLC*, 980 So.2d 68, 80 (La. App. 5 Cir 2008); *Ruschel v. St. Amant*, 66 So.3d 1149, 1153 (La. App. 5 Cir. 2011) ("This article effectively turns strict liability into negligence claims."). In order to recover under this article, a plaintiff must prove "(1) the thing was in defendant's custody and control; (2) the thing contained a defect which presented an unreasonable risk of harm to others; and (3) the defendant knew or should have known of the defect." *Davis v. Country Living Mobile Homes, Inc.*, 76 So.3d 1248, 1250 (La. App. 3 Cir. 2011).

There is no disagreement as to whether the machine was in Wal-Mart's control, further resolving the issue of whether the fact that Benton was stung by bees during the time in which she was using it constitutes a defect which presented an unreasonable risk of harm to others. However, Benton's allegations remain insufficient to establish that Wal-Mart knew or should have known about the presence of bees. While Benton's Complaint alleges that Wal-Mart employees knew of the bee issues, Benton testified that to her knowledge, Wal-Mart only became aware of the issue after Benton told them about it. (R. Doc. 17-3, pp. 5-6). Benton's testimony does not otherwise indicate that any

Wal-Mart employee knew or should have known of the presence of bees in the machine. (R. Doc. 17-3, pp. 5-6).

Since Benton has not proven that Wal-Mart had actual knowledge of the defect, the question becomes whether Wal-Mart can be charged with constructive knowledge of the defect due to the facts that (1) the machine was in Wal-Mart's possession and (2) Benton was stung while using the machine. "The concept of constructive knowledge imposes a reasonable duty to discover apparent defects in things under the defendant's garde." *Johnson v. Enterfy Corp.*, 827 So.2d 1234, 1238 (La. App. 2 Cir. 2002). Analogous cases indicates that Wal-Mart did not have constructive knowledge of the defect in the blood pressure machine by virtue of these two facts. *See, e.g.*, *Grogan v. Women's and Children's Hospital*, 981 So.2d 162, 166-68 (La. App. 3 Cir. 2008) (finding that even where hospital had knowledge of past insect infestations, it had no reason to know of presence of particular breed of poisonous spider which bit man sleeping on hospital couch); *Nicholson v. Horseshoe Entertainment*, 58 So.3d 565, 570-71 (La. App. 2 Cir. 2011) (finding defendants had no knowledge of defects in escalator under their control, where duly maintained escalator maintenance record indicated nine prior incidents, but contained no indication of "heavy jerking" which caused plaintiff's injury). Therefore, there is no question of material fact suggesting that Wal-Mart knew or should have known prior to the incident that the blood pressure machine contained bees posing an unreasonable risk of harm to its patrons.

### 2. General Negligence Theory

Nor can Benton establish her claims under general negligence principles from her status as an *invitee* in Wal-Mart's store. "We are responsible, not only for the damage occasioned by our own act, but that which is caused by the act of persons for whom we are answerable, or of the things which we

have in our custody." La. Civ. Code. Ann. 2317.[8] In general, to prove a claim against a merchant, a customer must prove a *prima facie* claim for negligence, establishing that Wal-Mart (1) had a duty of care towards her, (2) breached that duty, (3) the breach was the cause-in-fact if Benton's injuries, (4) the breach was the proximate cause of Benton's injuries, and (5) Benton has suffered actual damages. *See Christy v. McCalla*, 79 So.3d 293, 299 (La. 2011). "Merchants are not insurers of their patrons' safety and a customer is under a duty to use ordinary care to avoid injury." *Cusimano v. Wal-Mart Stores, Inc.*, 906 So.2d 484, 488 (La. App. 1 Cir. 2005).

As noted above, the parties do not dispute that Benton was injured or that her injuries occurred during the time she was using property owned by Wal-Mart and located in a Wal-Mart store. Benton has proven nothing beyond the fact that she was stung by a bee during the time she was present in a Wal-Mart store. (R. Doc. 17-3, pp. 5-6). She has not proven that Wal-Mart knew or should have known about the alleged presence of bees in the machine.

In other circumstances, Louisiana courts shift the burden to the store to disprove its own negligence once a customer establishes injury in a store. *See, e.g.*, *Gonzales v. Winn-Dixie Louisiana, Inc.*, 326 So.2d 486, 488-89 (La. 1976) (finding that store owner had burden to show that spill on supermarket floor did not occur through the negligence of store employees). Nevertheless, such shifts of the burden of presumption hinge on whether the injury occurred from "reasonably expected risks." *Brown v. Winn-Dixie Louisiana, Inc.*, 452 So.2d 685, 687 (La. 1984) (finding that, in a grocery store, the presence of spills caused by fallen merchandise was a reasonably foreseeable risk). In this case,

---

[8]The Louisiana Civil Code contains a "merchant liability" statute. La. Rev. Stat. Ann. art. 2800.6. This statute indicates that a plaintiff must prove, in addition to general negligence principles, that the merchant had (2) . . . actual or constructive notice of the condition which caused the damage, *prior to the occurrence*." *Id.* (emphasis added). However, Louisiana courts have found that this statute is not a plaintiff's sole remedy in cases involving store owners. *See, e.g.*, *Crooks v. National Union Fire Insurance Co.*, 620 So.2d 421, 424 (La. App. 3 Cir. 1993) (applying claim to case involving customer's alleged tripping over hose attached to a vacuum cleaner operated by employee of defendant store).

the presence of bees dwelling in a blood pressure machine is not, without more, a reasonably foreseeable risk of operating a retail store sufficient to shift the burden to the defendants to prove their lack of negligence. By extension, there is no question of material fact based upon the evidence presented that Wal-Mart knew of the presence of bees before the incident on Wal-Mart's premises.[9]

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendant, Wal-Mart Stores, Inc.'s, **Motion for Summary Judgment (R. Doc. 17)** is **GRANTED**.

New Orleans, Louisiana, this 4th day of October 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] In Benton's untimely opposition she raises the issue of *res ipsa loquitor*, an issue which Wal-Mart responded to in its Memorandum in Support of its Motion for Summary Judgment. As noted previously Benton's Complaint alleges "negligence" and "strict liability" damages. These two claims are unsupported by citation to any applicable Louisiana statute; there is no indication from the facts of the Complaint that the *res ipsa* doctrine applies to this claim. Because the issue was not properly raised by Benton in her Complaint, there are no grounds to consider it here.